UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF NEW MEXICO

In re:

MOUNTAIN EDGE LLC,
a New Mexico limited liability company,

                                                   No. 12-10835 t11

       Debtor.

## MEMORANDUM OPINION ON SINGLE ASSET REAL ESTATE STATUS

This contested matter is before the Court on Clare Miller's ("Miller's") Motion to Designate Proceeding Single Asset Real Estate Case (the "Motion"), filed March 23, 2012, doc. 8; the debtor in possession's (the "Debtor's") objection to the Motion, filed April 16, 2012, doc. 10; the Debtor's Memorandum of Points and Authorities, filed May 7, 2012, doc. 27 (including the Affidavit of Jim Haynes, attached as Exhibit A (the "Haynes Affidavit")); and Miller's Memorandum Pursuant to Court's May 1, 2012 Order, filed May 8, 2012, doc. 28.

This is a core matter, and the Court may enter a final order. The parties requested a decision based on stipulated facts, and waived their right to a final, evidentiary hearing.[1] The Court has now considered the stipulated facts and the briefs of the parties, and has made an independent inquiry into applicable case law. Being sufficiently informed, the Court hereby issues the following Memorandum Opinion.

STIPULATED FACTS

---

[1] The stipulated facts include those set forth in the Haynes Affidavit, information on the Debtor's schedules and statement of financial affairs (as amended), and the Debtor's monthly operating reports. At a status conference held September 17, 2012, debtor's counsel Charles Hawthorne agreed to file a supplemental affidavit of Jim Haynes, principal giving particulars about the alleged completed sale of water rights, while Miller's counsel agreed that the facts to be contained therein would be included in the Stipulated Facts. The deadline to file the supplemental affidavit was October 9, 2012. No supplemental affidavit was filed, so the stipulated facts do not include any information about the sale of water rights other than as set forth in the Haynes Affidavit and the other documents listed above.

A. The Debtor is a New Mexico limited liability company. According to the Debtor's bankruptcy schedules, the sole owners of the Debtor are Jim Haynes, the Debtor's general manager, and his wife Billie Haynes. The Debtor has no employees.

B. The Debtor commenced this Chapter 11 case on March 3, 2012.

C. The Debtor owns 24 residential lots in the Mountain Ridge subdivision in Otero County, New Mexico (the "Subdivision").

D. The Debtor's original bankruptcy schedules, filed March 15, 2012, listed no real or personal property other than the Subdivision. On April 24, 2012, after Miller filed the Motion, the Debtor amended its schedules to add 6 acre-feet of water rights in Schedule A and nine wells on Schedule B. Elsewhere the Debtor asserts that it owns 12 acre-feet of water rights appurtenant to the Subdivision.

E. The Debtor has used the water rights to provide water to Subdivision lot owners who did not want to drill their own water well, and to maintain two trout ponds as amenities.

F. On May 31, 2012, the Debtor filed a Motion to Sell Water Rights to Chippaway Park Water Association for $60,000 (the "Sale Motion"). No objections to the Sale Motion were filed. To date no order granting the Sale Motion has been tendered to the Court for entry.

G. The Sale Motion states that the amount of water rights to be sold was two acre feet. However, in the Haynes Affidavit, Mr. Haynes testified that 6 acre-feet were to be sold for the $60,000 price.

H. Mr. Haynes avers that in the last two years the only income generated by the Debtor has been the sale of the six acre feet of water rights. It is not clear whether the water

rights he is referring to are the ones that are the subject of the Sale Motion or to water rights sold pre-petition.

I.   Mr. Haynes avers that the Debtor's only activities in the last two years have been to maintain a sales office, sell the six acre feet of water rights, and wait for the land sales business to recover.

J.   Mr. Haynes believes the Subdivision (apart from the water rights and the water wells) is worth about $2,300,000, or an average of $95,833 per lot.

K.   It appears from the Haynes Affidavit and the bankruptcy schedules that the water rights may be worth about $10,000 per acre foot, for a total of between $60,000-$120,000, depending on whether there are six or 12 acre feet of water rights owned by the Debtor.

L.   The Debtor's Statement of Financial Affairs does not show any pre-petition sales of water rights in the last two years. The Debtor's operating reports do not reflect any post-petition sales of water rights.

M.   On August 17, 2012, the Debtor filed a plan of reorganization, doc. 51 (the "Plan"). No disclosure statement has yet been filed.

N.   Miller holds a claim secured by four lots in the Subdivision.

## DISCUSSION

1.   <u>Stay Relief Under § 362(d)(3)</u>.  11 U.S.C. § 362(d)(3) provides an additional basis for relief from the automatic stay for creditors holding claims secured by "single asset real estate" (hereafter, "SARE"). The pertinent portions of § 362(d) are:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

...

  (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90–day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later—

  (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or

  (B) the debtor has commenced monthly payments that—

  (i) may, in the debtor's sole discretion, notwithstanding section 363(c)(2), be made from rents or other income generated before, on, or after the date of the commencement of the case by or from the property to each creditor whose claim is secured by such real estate (other than a claim secured by a judgment lien or by an unmatured statutory lien); and

  (ii) are in an amount equal to interest at the then applicable nondefault contract rate of interest on the value of the creditor's interest in the real estate....

11 U.S.C. §§ 362(d) and (d)(3).

  2. <u>The purpose of § 362(d)(3)</u>. Section 362(d)(3) was enacted as part of the Bankruptcy Reform Act of 1994. *In re Philmont Devel. Co.*, 181 B.R. 220, 223 (Bankr. E.D. Pa. 1995). "The drafters of sections 101(51B) and 362(d)(3) were obviously attempting to implement a mechanism by which a species of cases, "single asset real estate" Chapter 11 cases, would be forced to proceed on an expedited track." *Id.*

  3. <u>Definition of "Single Asset Real Estate."</u> 11 U.S.C. § 101(51B) contains the definition of "single asset real estate":

> The term "single asset real estate" means real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental thereto.

-4-

In *In re Pioneer Austin East Devel. I, Ltd,* 2010 WL 2671732 (Bankr. N.D. Tex 2010), the court discussed how to determine whether a debtor's property is SARE:

> First, the real property must constitute a single property or project. This definition of real property recognizes that real estate development can be completed in separate projects, comprised of several tracts or parcels of land, and still constitute a single property for the purpose of single asset real estate cases. *See In re Club Golf Partners*, 2007 WL 1176010, *5 (E.D. Tex. 2007) (finding that several separate tracts of land collectively operated as a golf club are a single property under the definition of single asset real estate). Second, the real property must generate substantially all of the debtor's income. The focus is on the revenues received from the property itself, rather than the fruit of worker's labor and management services. *See id.* Third, the debtor must not be involved in any substantial business other than the operation of its real property and the activities incidental thereto. An absence of active business operations with only passive and truly incidental activities such as the mere receipt of rent will render the property single asset real estate. *See In re Kara Homes, Inc.*, 363 B.R. 399, 406 (Bankr. D. N.J. 2007.) In contrast, varied business activities will render a debtor outside the scope of §101(51B). *See Club Golf Partners*, 2007 WL 1176010 at *6. The inquiry distinguishes between entrepreneurial, active labor and efforts versus merely passive investment income.

2010 WL 2671732 at *2.

Because of the sparse legislative history, courts have looked to pre-1994 cases to help determine whether a debtor's property is SARE. *In re Philmont Devel. Co.*, 181 B.R. at 223. *See also In re CBJ Development, Inc.*, 202 B.R. 467, 471 (9th Cir. BAP 1996) ("courts construing these new Code sections have turned to earlier case law granting dismissal or relief from the §362 automatic stay"); *In re Scotia Pacific Co., LLC*, 508 F.3d 214, 224 (5th Cir. 2007) ("the pre-1994 meaning of SARE is helpful in determining the meaning Congress intended to give the term").

It is generally accepted that raw land or real property acquired and/or held for development falls within the definition of SARE. *See, e.g. In re Kkemko, Inc.*, 181 B.R. 47, 51 (Bankr. S.D. Ohio 1995) ("single asset real estate" means a building or building which were intended to be income producing, or raw land); *CBJ Development,* 202 B.R. at 472 (citing *Kkemko*); *In re Club Golf Partners, L.P.*, 2007 WL 1176010 at *2 (E.D. Tex 2007) (citing

*Kkemko*); *In re RIM Development, LLC*, 2010 WL 1643787 at *1 (Bankr. D. Kan. 2010) (mixed-use development of town homes and commercial lots was SARE); *In re Pioneer Austin East Development I, LTD,* 2010 WL 2671732 at *3 (Bankr. N.D. Tex. 2010) (eight parcels held for residential development was SARE); *In re Webb MTN, LLC,* 2008 WL 656271 at *5 (E.D. Tenn. 2008) (five parcels of undeveloped real estate acquired for the purpose of developing a single resort together constitute SARE); *In re Light Foot Group, LLC*, 2011 WL 5509025 at *4 (Bankr. D. Md. 2011) (residential development was SARE despite incidental projected income from repairs); *In re Pensignorkay, Inc.*, 204 B.R. 676, 683 (Bankr. E.D. Pa. 1997) (parcel held for development was SARE); *In re Lagoon Breeze Development Corp.*, 2011 WL 1624988 at *2 (Bankr. S.D. Cal. 2011) ("most cases have held that construction and land development activities, such as those in which the Debtor is engaged, do not constitute business activity separate from the operation of the property as required by §101(51B)," citing *In re Kara Homes, Inc.*, 363 B.R. 399, 405 (Bankr. D.N.J. 2007) and *In re Oceanside Mission Assocs.*, 192 B.R. 232 (Bankr. S.D. Cal. 1996)).

In *In re Brutsche*, 2012 WL 526047 at *15 (Bankr. D.N.M. 2012), the Court stated "in prior bankruptcy cases many developers have argued that development is a substantial business other than the operation of the real property. Courts disagree." In support the Court cited *the Club Golf Partners* and the *Kara Homes* cases.

On the other hand, real estate owned by a debtor as part of an active business enterprise is not SARE. *See, e.g., Club Golf Partners,* 2007 WL 1176010 at *2 (golf course and related businesses are not SARE); *CBJ Development,* 202 B.R. at 471 (a hotel is not SARE); *Scotia Pacific Co.,* 508 F.3d at 224-25 (200,000 acres of timberland on which debtor conducted a

timber harvesting business is not SARE); *Kkemko, Inc.,* 181 B.R. at 51 (operation of a 270 boat marina and related businesses on 40 acres is not a SARE).

4. <u>The Subdivision is SARE</u>. It is clear to the Court that the Subdivision is SARE within the meaning of § 101(51B) and § 362(d)(3). Apart from the potential sale of water rights, the Subdivision is the type of development property typically considered SARE.

The Debtor's proposal to sell water rights is not a sufficient "substantial business activity" separate from operation of the Subdivision to take the Subdivision out of the SARE category.[2] Rather, the proposed sale of water rights is incidental and relatively minor. As Mr. Haynes testified in his affidavit, the only things the Debtor has done in the last two years are to maintain the sales office, sell six acre-feet of water rights, and wait for the land sales business to improve. This sounds very similar to the Fifth Circuit's description of passive business activity in *In re Humble Place Joint Venture*, 936 F.2d 814, 817 (5th Cir. 1991), i.e. "mowing the grass and waiting for market conditions to turn." *See Club Golf Partners*, 2007 WL 1176010 at *5 (quoting *Humble Place*), and *Webb MTN, LLC,* 2008 WL 656271 at *6 (same quote).

## CONCLUSION

The Debtor's case is a single asset real estate case, and the Plan does not qualify under §362(d)(3)(A).[3] The Debtor must commence interest-only payments to all creditors holding liens on the Subdivision property, or else file a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time, within 30 days from date this opinion is entered, to avoid stay relief under § 362(d)(3).

---

[2] It is also not clear that the sale of water rights should be treated differently that the sale of real estate, since water rights are treated like real property for certain purposes. *See, e.g., Walker v. United States*, 2007-NMSC-038, ¶39, 142 N.M. 45, 56, 162 P.3d 882, 893 (2007)(citing *Posey v. Dove*, 57 N.M. 200, 210, 257 P.2d 541, 547 (1953)).

[3] The Plan appears unconfirmable on its face because, inter alia, there is no deadline for paying secured creditors' claims, so theoretically creditors could be forced to wait 100 years before receiving any payment. In addition, the lack of a disclosure statement means that the Plan cannot proceed to confirmation.

This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law under Fed. R. Bankr.P 7052. Appropriate orders will be entered.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

**Entered on the docket: October 10, 2012**

Copies to:

Charles E Hawthorne
900 Sudderth Dr
Ruidoso, NM 88345-7224

Leonard K Martinez-Metzgar
P.O. Box 608
Albuquerque, NM 87103-0608

John D. Wheeler
P.O. Box 1810
Alamogordo, NM 88311-0600

Ruben "Trey" Arvizu
P.O. Box 1479
Las Cruces, NM 88004-1479